IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION FILE<br>NO. 4:15-CR-15-01-HLM-WEJ |
| ADAM MICHAEL ANDERSEN,<br>Defendant. | |

**NON-FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on defendant Adam Michael Andersen's Amended and/or Supplemental Motion to Suppress Illegally Seized Evidence [22], which challenges the affidavit supporting the state search warrant for his residence under Franks v. Delaware, 438 U.S. 154 (1978). Because defendant has failed to make the substantial preliminary showing required under Franks, he is not entitled to an evidentiary hearing; thus, the undersigned **RECOMMENDS** that Defendant's Motion [22] be **DENIED**.[1]

**I.   RELEVANT FACTS**

---

[1] Defendant's initial Motion to Suppress Evidence [13] did not make a Franks challenge. The Court will receive evidence related to the initial Motion to Suppress Evidence and the Motions to Suppress Statements [19, 20] at a hearing set for August 26, 2015.

### A.     Bartow County Sheriff's Office Responds to 911 Calls

Documents attached to the Amended Motion show that on the evening of December 30, 2014, Bartow County 911 received two calls stating that persons identified as defendant's former girlfriend, Maria Pappas, and her current boyfriend, Ricky Bronner, had broken into defendant's home located at 84 Old Rudy York Road in Cartersville, Georgia. Law enforcement also believed that those two persons were in the home with guns. The details supporting this summary are listed below.

Caller 1, a friend of defendant, reported that while he was on the telephone with defendant, Ms. Pappas had broken into Mr. Andersen's house and that their call became disconnected. Caller 1 described Ms. Pappas as being "strung out on meth;" as having stolen from defendant in past; and as having gone to jail. Caller 1 described Mr. Bronner as "kind of crazy." (See Tr. of Call # 1 [22-2], at 1.)

Caller 2, defendant's brother, called 911 immediately after speaking to their mutual friend, Caller 1, to report what Caller 1 had just told him, including the fact that when Ms. Pappas broke into defendant's house, his telephone conversation with Caller 1 was cut off. Caller 2 described Ms. Pappas as being "out on parole." Caller 2 also reported that Caller 1 was on his way over to defendant's home. (See Tr. of Call # 2 [22-2], at 2.)

2

After the 911 operator dispatched deputies from the Bartow County Sheriff's Office, an officer (unit 953) who was en route encountered an individual who was also on the way to the scene[2] and reportedly on the telephone with the complainant. (See Tr. of Dispatch Tracks [22-2], at 3.) That deputy reported to the dispatcher that this individual informed him that the complainant said "that there's people in the house with guns." (Id.)[3]

### B.     The Affidavit Supporting the Search Warrant

On December 30, 2014, Sergeant Eric Williams of the Bartow-Cartersville Drug Task Force applied for a search warrant for defendant's residence from Bartow County Magistrate T. Moseley. (See Aff. & App. [25-1] 2.) The averments establishing probable cause contained in Sergeant Williams's affidavit were as follows:

> On Tuesday, December 30, 2014 at approximately 2025 hours Bartow County 911 dispatched a burglary in progress to Bartow County Sheriff Deputies. Dispatch reported that a female and a male were inside the residence and they were both armed with firearms. The Deputies were dispatched to [84 Old Rudy York Road, Cartersville, Georgia]. Upon

---

[2] Since Caller 1 was on his way over to defendant's house, it is probable that he was the individual the deputy encountered.

[3] The CAD Incident Details attached to defendant's Motion [22-1] are consistent with the above-cited transcripts.

3

> arriving on scene Deputies and a Drug Task Force Agent encountered a white female exiting the residence from the rear of the residence. After she was detained, Deputies entered said residence to attempt to locate the male. During the search of said residence Deputies observed in plain view an amount of suspected Marijuana and what appeared to be Marijuana being manufactured. Deputies also observed several firearms inside said residence. Deputies then made contact with the owner of said residence, Adam Anders[e]n prior to making entry into said residence. Anders[e]n was armed with a handgun and post Miranda Anders[e]n stated that there were additional controlled substances inside said residence.

(Id. at 1-2.) The application sought permission to search and seize items such as marijuana and any other illegal drugs and firearms. (Id. at 1.) The magistrate issued the search warrant on December 30, 2014 at 10:28:25 p.m. (See Search Warrant [25-2] 2.)

### C. Ms. Pappas's Affidavit

The "white female" mentioned in Sergeant Williams's affidavit was Maria Pappas. She provided an affidavit in support of defendant's Amended Motion, which provides in relevant part as follows:

> 2. On December 30, 2014 I went over to Adam Andersen's home who was my former boyfriend. We had spoken earlier, and he was threatening to commit suicide. The lights of the house were off, so I kicked in the front door and went looking for him throughout the house.

4

3. When I could not find him, I sat down inside to wait. After a little while, I saw several police officers outside the home. I went outside and the police asked me what I was doing. I explained to them why I was there. I told the law enforcement present that there was nobody else in the home, and that I came over the house because Adam Andersen was threatening to cause harm to himself and that I was worried about his well being.

4. At that time, Adam Andersen came out of the woods and told the police that the house they were in front of was his house. The police also tackled Adam Andersen when they saw him. He was carrying a firearm when he came out of the woods. The deputies questioned me as to whether the person that they tackled was actually Adam Andersen. I told them that [] this was Adam Andersen, and he was the homeowner.

5. The Bartow law enforcement that was present told Adam Andersen that they needed to go inside and secure his home. They said that was their procedure. At that point, they had not yet searched the home.

6. At no point did I overhear Adam Andersen agree to allow law enforcement to enter his home.

(Pappas Aff. [26-1] ¶¶ 2-6.)

## II.  CONTENTIONS OF THE PARTIES

Mr. Andersen argues that the affidavit in support of the search warrant contains material omissions and misstatements which necessitate a <u>Franks</u> hearing. Defendant claims that the affidavit failed to inform the magistrate that a protective sweep of his residence had been conducted without his consent, that he had been

5

secured outside the residence at the time of the sweep, that Ms. Pappas was unarmed, and that she had informed the deputies that no one else was in the house. (Def.'s Mot. [22] 3-4.) Thus, defendant asserts that the deputies had no reason to enter his home. (Id. at 4.) Had this omitted information been included in the affidavit, defendant asserts that the magistrate would have determined that the first entry was illegal, and would have issued the warrant based only on facts independent of that first entry. (Id. at 5.) Although defendant concedes that the affidavit states that the sole reason for entering the home was to locate the male, he faults the affidavit for failing to identify that male. (Id. at. 4.) Defendant also points to the following statement in the affidavit which confuses the chronology: "'Deputies then made contact with the owner of said residence, Adam Anders[e]n prior to making entry into said residence.'" (Id., quoting affidavit.) Finally, defendant claims that even though the CAD record states that further conversations with a complainant reflect that the burglars were believed to be armed, the affidavit omitted that the two callers to 911 did not mention firearms. (Id. at 5-6.)

The Government responds that defendant does not accuse Sergeant Williams of making any materially false statements. Instead, defendant only points to insignificant or immaterial omissions which had no impact on the magistrate's

6

determination of whether there was probable cause to search defendant's home. The Government thus argues that defendant has failed to make the substantial preliminary showing necessary to obtain a Franks hearing. (Gov't Resp. [25] 4.)

## III. ANALYSIS

A presumption of validity attaches to an affidavit supporting a search warrant application. Franks, 438 U.S. at 171. "Thus, a defendant is generally not entitled to an evidentiary hearing on a motion to suppress based on alleged misrepresentations or omissions in a search warrant affidavit." United States v. Price, 582 F. App'x 846, 850 (11th Cir. 2014) (per curiam). A defendant has a right to a Franks hearing only where he makes "'a substantial preliminary showing that an affiant knowingly and intentionally included a false statement in an affidavit, or made the false statement with reckless disregard for its truth,'" and "'the false statement was necessary to the finding of probable cause.'" United States v. Maharaj, No. 07-80024-CR-CR, 2007 WL 2254559, at *6 (S.D. Fla. Aug. 2, 2007) (quoting Franks, 438 U.S. at 156).

Franks extends to omissions from affidavits. United States v. Jenkins, 901 F.2d 1075, 1079-80 (11th Cir. 1990). A warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless

7

disregard for the accuracy of the affidavit. See United States v. Martin, 615 F.2d 318, 329 (5th Cir. 1980).[4] "A party need not show by direct evidence that the affiant makes an omission recklessly." Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir. 1997). "Rather, it 'is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself.'" Id. (quoting Martin, 615 F.2d at 329). Omissions that are not reckless, but are instead negligent, or insignificant and immaterial, will not invalidate a warrant. United States v. Reid, 69 F.3d 1109, 1114 (11th Cir. 1995). Even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause. Jenkins, 901 F2s at 1080.

"[O]nly in rare instances is a Franks hearing merited when facts have been omitted in a warrant application" because "'[a]llowing omissions to be challenged would create a situation where almost every affidavit of an officer would be questioned.'" United States v. Lievertz, 247 F. Supp. 2d 1052, 1058 (S.D. Ind. 2002) (quoting Mays v. City of Dayton, 134 F.3d 809, 815 (6th Cir. 1998)); see also United

---

[4]All cases from the former Fifth Circuit handed down by the close of business on September 30, 1981, are binding on the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

8

States v. Atkin, 107 F.3d 1213, 1217 (6th Cir. 1997) (affidavits with potentially material omissions, while not immune from Franks inquiry, are much less likely to merit a Franks hearing than are affidavits including allegedly false statements).

"'The Franks standard is a high one.'" United States v. Nakouzi, No. 3:05CR154 (MRK), 2005 WL 3211208, at *5 (D. Conn. Nov. 30, 2005) (quoting Rivera v. United States, 928 F.2d 592, 604 (2d Cir. 1991)).

> [T]o be material under Franks, an omission must do more than potentially affect the probable cause determination: it must be "necessary to the finding of probable cause." For an omission to serve as the basis for a hearing under Franks, it must be such that its inclusion in the affidavit would defeat probable cause. . . . Omitted information that is potentially relevant but not dispositive is not enough to warrant a Franks hearing.

United States v. Moody, 762 F. Supp. 1491, 1500 (N.D. Ga. 1991) (quoting United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990)).  The defendant bears the burden of showing that, "absent those misrepresentations or omissions, probable cause would have been lacking." United States v. Novaton, 271 F.3d 968, 987 (11th Cir. 2001); Maharaj, 2007 WL 2254559, at *6.

Mr. Andersen has not met the strict standard for obtaining a Franks hearing. The affidavit informs the magistrate that deputies had already been in defendant's

9

residence as part of a protective sweep[5] before they sought the warrant. The affidavit states that they did so to locate the presumably armed male burglar and, while doing so, observed suspected criminal activity in plain view. Given that consent is not needed before law enforcement officers conduct a protective sweep (see supra note 5), the affidavit's failure to reveal that Mr. Andersen had been secured or did not consent to that first entry is immaterial to the probable cause determination. There was also no need to identify the presumably armed male burglar by name, so this omission was immaterial. The affidavit's failure to disclose that the two callers to 911 did not mention firearms is also immaterial. Given the above-cited transcripts,

---

[5] "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers and others." Maryland v. Buie, 494 U.S. 325, 327 (1990). Police officers do not need a warrant or probable cause to conduct a protective sweep of a home, but must have "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. at 334. A protective sweep is limited to a cursory inspection of the spaces where a person may be found, and must last no longer than necessary to dispel the reasonable suspicion of danger. Id. at 335-36. However, the protective sweep need not be incident to an arrest. See United States v. Caraballo, 595 F.3d 1214, 1224-25 (11th Cir. 2010). "The underlying rationale for the protective sweep doctrine is the principle that police officers should be able to ensure their safety when they lawfully enter a private dwelling." Leaf v. Shelnutt, 400 F.3d 1070, 1087 (7th Cir. 2005) (officers reasonably conducted protective sweep where they entered home to ascertain whether burglary had occurred and had substantial reason to believe their safety might be at risk).

10

Sergeant Williams accurately summarized what law enforcement knew when it arrived on the scene. Nothing he wrote about this topic was either intentionally false or made with a reckless disregard for the truth.

The affidavit's failure to disclose that Ms. Pappas was found unarmed or that she had informed deputies that no one else was in the house is likewise immaterial to the probable cause determination. Even if those two pieces of information had been provided, the magistrate would likely have concluded that the deputies had acted reasonably in conducting a protective sweep given the situation accurately described in the affidavit–a report of an armed man and woman burglarizing defendant's residence. Ms. Pappas may have been unarmed because she left her gun inside the residence. The only way to confirm her assertion that no one else was in the residence, and to make sure that an armed man was not lying in wait to harm those outside, was to enter and secure the residence.[6]

---

[6] The argument defendant makes here is reminiscent of one made in In re Sealed Case 96–3167, 153 F.3d 759 (D.C. Cir. 1998). In that case, the police officers believed that the defendant was engaged in an on-going burglary attempt that could have endangered the occupants of the home if they had paused to obtain a warrant. Id. at 766. The defendant argued that the police had no evidence he was armed when he entered the house, and no evidence that there were any occupants inside for him to endanger. The court rejected that argument, noting that because

the police also had no evidence to the contrary, it was appropriate for

11

Finally, defendant is correct that the affidavit's chronology of events is confusing. It appears as if the deputies entered the residence to conduct the protective sweep, and that "[d]eputies **then** made contact with the owner of said residence, Adam Anders[e]n." (See Aff. & App. [25-1] 1 (emphasis added).) However, the affidavit then states that such contact was made "prior to making entry into said residence." (Id.) Despite this discrepancy, there is no evidence that this statement was intentionally false or made with a reckless disregard for the truth. Instead, it appears to be a negligent, typographical error, because deleting the word "then," as the magistrate likely did when reading the affidavit, brings order to the chronology. Indeed, that reading would be consistent with the claim made in Ms. Pappas's affidavit that the deputies encountered Mr. Andersen before making entry

---

> them to act on the basis of the kinds of risks burglaries normally present. They did not have to wait until they heard shots fired or an occupant scream. By that time, the purpose of permitting immediate entry–preventing such shots and screams–would have been lost. "Speed here was essential," and that is the essence of an exigent circumstance. As the Supreme Court recognized in Hayden, "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others."

Id. at 767 (internal citations omitted).

12

into the residence. Therefore, this error in the chronology is a negligent or immaterial mistake that does not warrant a hearing.

## IV. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that Defendant's Amended and/or Supplemental Motion to Suppress Illegally Seized Evidence [22] be **DENIED** and that no Franks hearing be held.

**SO RECOMMENDED**, this 5th day of August, 2015.

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)